## ROCKVILLE BANK *v.* VICTORY OUTREACH MINISTRIES, INC.
## (AC 31471)

DiPentima, C. J., and Bishop and Gruendel, Js.

2

Argued September 23—officially released November 9, 2010

*Glenn T. Terk*, for the appellant (defendant).

*Linda Clifford Hadley*, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. In this mortgage foreclosure action, the defendant, Victory Outreach Ministries, Inc., appeals from the judgment of foreclosure by sale rendered by the trial court setting a sale date for certain real property owned by the defendant and, thereafter, approving the sale on the motion of the committee of sale (committee). On appeal, the defendant claims that the court improperly (1) ordered the sale in light of evidence that the defendant had complied with an agreement (agreement) entered into with the plaintiff,

Rockville Bank, in satisfaction of the mortgage, and (2) approved the sale despite that compliance and evidence that the committee improperly administered the sale. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On December 28, 2005, the defendant executed a mortgage in favor of the plaintiff as security for a $500,000 loan. The mortgage encompassed two parcels of land located in East Windsor and South Windsor. One of these parcels is undeveloped property that the defendant planned to convert into a condominium complex (undeveloped parcel), and the other is developed property on which the defendant's church and church infrastructure are situated (developed parcel).

The defendant subsequently defaulted on the loan, and the plaintiff instituted foreclosure proceedings pursuant to a complaint filed March 5, 2007. On August 6, 2007, the court rendered judgment in favor of the plaintiff, ordering a foreclosure by sale of both parcels, and set an initial sale date of February 9, 2008. Nonetheless, because of delays in the appraisal process and ongoing negotiations between the parties, the original sale date was eventually moved to May 17, 2008. On May 16, 2008, the day before the parcels were to be sold, the parties negotiated the agreement in lieu of the impending sale. The plaintiff then filed a motion to open the judgment of foreclosure by sale, with the caveat that the matter remain pending with the court in the event that the defendant defaulted on the terms of the agreement. The court granted the motion.

On February 13, 2009, the plaintiff filed a motion to set a new sale date, claiming that the defendant had defaulted on the terms of the agreement. The defendant filed an objection to the motion, and hearings were held on March 2 and 9, 2009. At the conclusion of the March

9 hearing, the court ruled that the defendant had failed to fulfill its obligations under the agreement, rendered a judgment of foreclosure by sale and set the sale dates for the undeveloped and developed parcels as July 11 and September 12, 2009, respectively. The sale of the undeveloped parcel took place as scheduled, and on July 16, 2009, the committee moved for approval of the sale.[1] On August 27, 2009, the court granted the committee's motion for approval over the defendant's objection.

The defendant now claims that the court improperly rendered a judgment of foreclosure and set a sale date for the two parcels, despite evidence of the defendant's compliance with the agreement, and improperly granted the committee's motion for approval of the sale of the undeveloped parcel. We address each of these claims in turn. Additional facts will be set forth as necessary.

I

The defendant first claims that because there was sufficient evidence to show that the defendant had fully complied with the terms of the parties' agreement, the court improperly ordered a sale date for the two parcels. Additionally, the defendant argues that the court abused its discretion in precluding the defendant from presenting evidence of its compliance. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim. The central purpose of the agreement was to grant the defendant "an additional six month period, [beyond the previously set sale date of May 17, 2008], to pay off the loan in full."[2] The terms of the agreement required, inter alia, that the

---

[1] The plaintiff was the successful bidder for the undeveloped parcel. At the time that this appeal was filed, the sale of the developed parcel had not yet taken place.

[2] The six month extension period terminated on November 17, 2008.

defendant provide the plaintiff with an executed deed for the undeveloped parcel in lieu of the immediate foreclosure sale of that property. The plaintiff was to hold this deed in escrow until the defendant paid off the loan in full or the end of the six month extension period, whichever occurred first. As a condition of the agreement, the defendant was required to procure "written confirmation" from the owners of an adjoining parcel (adjoining parcel)[3] that they would "sell their property for fair market value to the owner of the [undeveloped parcel—namely, the plaintiff], in the event that the [defendant] [was] unable" to repay the loan by the end of the six month extension. Furthermore, the defendant was obligated to deliver this written confirmation to the plaintiff "on or before May 27, 2008," or the condition would go unsatisfied.[4]

During the March, 2009 hearings on the plaintiff's motion to set a new sale date, the plaintiff's counsel represented to the court that the written confirmation called for under the agreement never had been received from the adjoining parcel owners. Therefore, as argued by the plaintiff, the defendant had failed to comply with a condition of the agreement, and the plaintiff was free to renew foreclosure proceedings for both the undeveloped and developed parcels. To the contrary, counsel for the defendant maintained that the written confirmation had been "sent to him from the adjoining parcel owners" before May 27, 2008, and, accordingly, the plaintiff was limited to its remedies under the agreement—namely, recording the deed for the undeveloped parcel.[5]

---

[3] This adjoining parcel was adjacent to the undeveloped parcel.

[4] Even if we assume that this condition was satisfied, the plaintiff agreed to return the deed for the undeveloped parcel to the defendant should the loan be repaid in full, or, alternatively, record the deed in the event that the defendant failed to repay the loan.

[5] There was no dispute that the defendant had failed to repay the loan in full by the end of the six month extension. Rather, the main point of contention between the parties during the March, 2009 hearings was what remedy was available to the plaintiff as a result of the defendant's default.

Following argument by counsel, the court agreed with the plaintiff, finding that, although the written confirmation may have been sent to the defendant's attorney by the attorney for the adjoining parcel owners before May 27, 2008, there was no evidence to show that it had been received by the plaintiff by that time.[6] As such, the court ruled that the plaintiff was not limited to the remedies provided for under the agreement, rendered a judgment of foreclosure by sale and set new sale dates for both the undeveloped and developed parcels.

Before addressing the merits of the defendant's claim that the court's ruling was improper, we begin with the applicable standard of review. "A foreclosure action is an equitable proceeding. . . . The determination of what equity requires is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Angle*, 284 Conn. 322, 326, 933 A.2d 1143 (2007).

Here, the gravamen of the defendant's claim is that the court improperly ordered new sale dates because the written confirmation establishes that the defendant complied with the condition of the parties' agreement. On the basis of our review of the record in this case, however, we cannot say that the court's factual finding that the plaintiff failed to receive the written confirmation by the May 27, 2008 deadline was clearly erroneous.

[6] A careful review of the record demonstrates that the written confirmation was dated May 23, 2008, and sent to the defendant's counsel that day via facsimile by counsel for the adjoining parcel owners.

See, e.g., *Kelly* v. *Stop & Shop, Inc.*, 281 Conn. 768, 776, 918 A.2d 249 (2007) ("[t]o the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous" [internal quotation marks omitted]). Although the written confirmation is dated May 23, 2008, and there is evidence to show that it was transmitted to the defendant's counsel that same day, there is no evidence to support the defendant's claim that the written confirmation was received by the plaintiff "on or before May 27, 2008," as the agreement required. Indeed, there is no evidence to refute the plaintiff's assertion that the written confirmation was first produced by the defendant on March 2, 2009, nearly nine months after it was to be delivered to the plaintiff.[7]

Moreover, the defendant's assertions that the court prevented it from "present[ing] evidence of compliance with the . . . [a]greement" is belied by the transcripts of the March, 2009 proceedings. Not only did the defendant offer the agreement to the court for consideration, but also both parties were allowed to articulate fully their positions with respect to the issue of whether or not the written confirmation was timely received by the plaintiff. The written confirmation itself is included in the court file, as is the attendant facsimile of May 23, 2008, from the attorney for the adjoining parcel owners to the defendant's counsel. In contrast to the defendant's claims during oral argument, at no time during the March, 2009 hearings did the defendant's counsel request an evidentiary hearing to address specifically the question of when the written confirmation was (or was not) received by the plaintiff. Nor did the

---

[7] Although both parties repeatedly use the terms written confirmation and option interchangeably when referring to the condition, there is ample evidence, including argument by both counsel and in the agreement itself, that the condition called only for a written confirmation to sell, not an option to purchase, the adjoining parcel.

defendant's counsel represent to the court at the March, 2009 hearings that one of the owners of the adjoining parcel was prepared to testify as to the timing and transmittal of the written confirmation.[8]

We conclude that the court had adequate evidence to find that the plaintiff had not timely received the written confirmation from the defendant as required under the agreement. We also conclude that the defendant's assertion that the court prevented the defendant from presenting evidence as to its compliance with the agreement is unsupported by the record. Accordingly, the defendant's claim fails.

## II

The defendant next challenges the court's approval of the sale of the undeveloped parcel, arguing both that the committee improperly administered the sale and that the evidence showed that the defendant complied in all respects with the parties' agreement. We are unpersuaded.

## A

First, the defendant claims that the court improperly approved the sale of the undeveloped parcel because there was evidence that the committee provided incorrect information to potential bidders. Specifically, the defendant alleges that the committee mistakenly informed potential bidders that, in order to bid successfully on the undeveloped parcel, a bidder would also have to bid on the developed parcel, resulting in an excessively inflated bid price. As the defendant argues, this mistake deterred potential bidders, depriving the defendant of a "bona fide sale" and allowing the plaintiff

---

[8] The transcripts disclose that the only time the defendant's counsel brought the court's attention to the presence of one of the adjoining parcel owners in the courtroom was during the August 27, 2009 hearing on the committee's motion to approve the sale of the undeveloped parcel.

to acquire the undeveloped parcel for an artificially low price.

The following additional facts are relevant to the resolution of the defendant's claim. On August 27, 2009, a hearing was held on the committee's motion to approve the sale of the undeveloped parcel. At that hearing, the court heard testimony from the committee as to the circumstances surrounding the sale of the undeveloped parcel and the information provided by the committee to potential bidders. During the committee's testimony, the following colloquy took place:

"[The Defendant's Counsel]: [W]e did have a conversation in which you indicated that there were three parcels *involved* [with the sale of the undeveloped parcel] in the subdivision and at that time we informed you that there were only two?

"[The Committee]: Yes.

\* \* \*

"[The Plaintiff's Counsel]: [D]id you tell [any potential bidders] that they would have to *purchase* the [developed] parcel in order to accomplish a subdivision?

"[The Committee]: No. I said that there were three parcels of land that the subdivision encompassed."[9] (Emphasis added.)

"[T]he applicable standard of review applied to a court's approval of a committee sale is the abuse of

---

[9] The three parcels referred to by the committee were the undeveloped parcel, the developed parcel and the adjoining parcel. The adjoining parcel was "involved" with the foreclosure sale because at the time of the sale, there was an ongoing dispute as to whether the owners of the adjoining parcel were willing to sell their property in an effort to raise more money to help the defendant pay off the loan. The developed parcel's "involvement" was more limited in that the defendant had granted easements over the developed parcel to encourage bidder interest by facilitating potential commercial development of the undeveloped parcel.

discretion standard." *First Connecticut Capital, LLC* v. *Homes of Westport, LLC*, 112 Conn. App. 750, 760, 966 A.2d 239 (2009). As previously noted, "an action of foreclosure is peculiarly equitable and . . . the court exercises discretion in ensuring that justice be done. . . . In approving the committee sale, [t]he court must exercise its discretion and equitable powers with fairness not only to the foreclosing mortgagee, but also to . . . the owners [of the foreclosed property]. . . . Most importantly, the court possesses the authority to refuse to confirm sales upon equitable grounds where [the sales are] found to be unfair or the price bid was inadequate." (Citations omitted; internal quotation marks omitted.) Id., 763. As a corollary, "in a foreclosure by sale, [t]he court is the vendor . . . and the committee of sale is the mere agent of the court. . . . For that reason, whatever discretion the committee may have certainly cannot extend to selling property . . . ." (Citation omitted; internal quotation marks omitted.) Id., 765–66.

We reject the defendant's claim that the court abused its discretion in approving the foreclosure sale of the undeveloped parcel in light of the information provided by the committee to potential bidders. The defendant's argument that the committee incorrectly informed bidders that they would need to purchase the developed parcel to bid successfully at the foreclosure sale of the undeveloped parcel is disproved by the transcript of the August 27, 2009 hearing. Indeed, it is clear from the transcript that the committee denied telling bidders that they needed to purchase the developed parcel and only stated that the developed parcel was "involved" with the foreclosure sale. Additionally, there was no evidence offered by the defendant to show that the foreclosure sale of the undeveloped parcel was otherwise unfair or

that the sale yielded an inequitable bid price.[10] Thus, we conclude that the court did not abuse its discretion in approving the sale of the undeveloped parcel and, as such, the defendant's claim fails.

## B

Finally, the defendant claims that the court improperly approved the sale of the undeveloped parcel, given evidence of the defendant's compliance with the parties' agreement, and improperly refused to hear evidence in this regard during the August 27, 2009 hearing on the committee's motion for approval.

The only evidence offered in support of this claim is the same written confirmation presented to the court during the March, 2009 hearings and the purported testimony of the adjoining parcel owner as to the timing and transmittal of the written confirmation. Accordingly, at the time the court approved the sale of the undeveloped parcel on August 27, 2009, the defendant had been granted an adequate opportunity to argue that the sale should not proceed given its compliance with the agreement. Because the court had previously rejected the defendant's argument of compliance on March 9, 2009, we fail to see how the court abused its discretion in approving the sale on August 27, 2009. It bears repeating that at no time did the defendant's counsel specifically request to offer evidence to refute the plaintiff's claim that the written confirmation had not been received by the plaintiff in accordance with the terms of the parties' agreement. Accordingly, the defendant's claim is without merit.

The judgment is affirmed and the case is remanded for the purpose of setting a new sale date as to the developed parcel.

In this opinion the other judges concurred.

---

[10] The undeveloped parcel was appraised at $155,000 at the time of the March 9, 2009 judgment of foreclosure by sale and sold to the plaintiff for $150,000 on July 11, 2009.